Good morning. May it please the Court, Tim Wilborn for Appellant Joyce Lansford. The pain issue is extremely convoluted and complex, as you've obviously seen from reading the briefs. And so what I want to start with is the issue that I think I can deal with quickly so that we'll get it out of the way. And that is the A.L.J.'s step four finding. A.L.J. found that the claimant could return to her past relevant work. Defendant, or I guess it's appellee in this court, concedes that part of that finding is incorrect. The picture framing job is medium work. A.L.J. limited this lady to light work, and so she can't do that. That's conceded. That's out of the way. So we have two other jobs. One of the jobs is the job in the furniture store, and that one is a combination job, as I briefed, Under this court's precedent in Valencia and Vertigan, and I also, in my brief, I discuss an Armstrong case from the Northern District of Texas. It talks about how if you have a past relevant job, which consists of more than one job title, which this did, if you look at her description, which would be on page 108, I believe, it's clear that at this particular job, she had janitorial duties. When she first came in before the store opened in the morning, she had to clean the place up. Then, during the day, she was a salesman of furniture. That was not a light job. It was a medium job, as evidenced by the fact that she was lifting and carrying up to 25 pounds at a time. So that job is out at step four of the sequential analysis, which requires the ALJ to proceed to step five, unless the third and final job could be relied upon, and it's my position that it can't. Now, in the defendant's brief, the defendant gives some DOT numbers, which he claims, actually, the brief was not written by this attorney. It was by a different attorney, but in which she claimed that this job was a particular dictionary of occupational titles, job classification number. But if you look at the record, there's simply no evidence in the record for that. If you look at the vocational testimony, which is on page 897, the vocational expert identifies jobs by name and erroneously testifies that they're all light jobs, but the record establishes that they're not light jobs. They're all medium jobs. So if you go to page 154, you will see the claimant's own description of this job, and it is, again, a medium job requiring lifting in excess of 20 pounds. So all three jobs are eliminated as pastoral work. The remaining issue that the sales clerk job is described in detail, detail on 154. So all three jobs are out. Claimant has met her burden of proving she can't do PRW. ALJ did not proceed to Step 5, so the court should automatically give a remand. There is only one remaining issue, and that is that the commissioner has argued that at Step 4, there's a two-pronged test, jobs as you perform them, which I have just demonstrated they're all eliminated because they were all medium as performed. But the commissioner has argued that there's another test, and the commissioner is correct. In SSR 8261, I believe it is, there's a second test, and that is, can you perform the job as generally performed in the national economy? Well, on that issue, there's no evidence in the record because the VE simply didn't give us a DOT number. We don't know what job this even is because there are probably hundreds of sales jobs in the DOT. Some of them are heavy, like stock clerk, which I believe this job was, and some of them are light. I mean, there are sales clerks that don't lift anything heavier than an earring, and there are other sales clerks, you know, who are lifting bags of concrete mix all day long. But this particular job is described as requiring lifting in the medium range, and so it's eliminated. So you're saying that the fact that the VE said that this is light work, semi-skilled, could be rejected because it doesn't have a specific DOT number attached to it? I'm saying that everything the VE testified, essentially, is demonstrably wrong. He said all these jobs were light work. I've proven that at least two of them were medium. The only one remaining is this one, and he didn't give us a DOT number. So we have to speculate what job it even is. I don't understand why that can't come into the realm of harmless error, since you have said it's equally correct that a sales clerk at Meijer & Frank might never lift anything heavier than an earring. Well, that wasn't what her job was. I understand that, but we're now in the realm beyond her specific job as performed, but the job as it exists in general. I don't understand why it wouldn't be harmless error not to give a DOT number. It wouldn't be harmless error because the job I gave as an example, never lifting anything heavier than an earring, is not this job. And the way we know that it's not this job is that this job involves stocking the shelves. Stocking the shelves. We're talking about two different things now, and I may be not making my question clear, but I'm not talking about what your client actually did. I'm now talking about the other prong of how sales clerk jobs in department stores work. I understand. And your assertion is that notwithstanding that it's described as retail sales at a department store, that that is insufficient for us to essentially review what the ALJ. It is insufficient to review. We don't know what job that was. The VE didn't identify the job. The only evidence in this entire file that tells us what the duties of that job were is on transcript page 154, where the claimant describes it in the medium lifting range. And because we don't have any evidence anywhere in the record. But she was describing her job. Isn't that what she's describing her job when you say she describes it? Yes. On transcript 154, she describes it. You're circling back, though. You're just saying the job as performed. But I thought you said they also – you don't also go – in order to go to and saying it, you're saying that, okay, she can't do the job as performed because of the problem. Right. Therefore, if it's retail sales in a department store, it encompasses a wide range of frames and concrete. In the general – Right. And we don't know which job it was. The VE didn't subdivide retail sales. Right. And so the ALJ was just guessing as to what job it really was. What would be peculiar about her having worked in a furniture store, transfer, sell, and bring fire equipment? Well, if the case proceeded to step five, that would be an issue that the ALJ would have to address. And I would note that at the date of the ALJ's decision, this lady was over 55 years old, and in order for a finding of transferability to be made, there would have to be closely transferable skills and a whole inquiry there, which this court very recently touched upon in a case called Bravey Commission. It was also out of my office. That was about two months ago, I think, Bravey came out. I haven't subsided it because I didn't anticipate that it would come out. Would you fill out, either before you leave, fill out a little slip that the deputy clerk has with the citation, or just send us a 28-J letter with that in it? Yes. Would it be okay if I just filed a 28-J letter electronically? That's easy. Sure, that's perfect. We'll hear from Mr. Burdett. Once again, appearing on behalf of the defendant appellee, the Commissioner of Social Security. The argument that was just made is not correct. It's a Step 4 case, and it remains a Step 4 case. SSR 8261 and all the case law explicating it says that past relevant work can encompass the job that the particular individual did perform, the job as, in fact, performed in the past, or it can be the job as generally performed in the economy. So if the job is sales clerk, it doesn't have to be limited to the description of duties on page 154 of the evidentiary record. That was the job as the claimant specifically performed. I understand his argument to be, though, on the second prong, as generally performed, that the record is fatally deficient because the vocational expert did not say, in addition to sales clerk being night work, semi-skilled, did not also say, and that is found at page number XYZ of the Dictionary of Occupational Titles. I think that is his argument, and I think that is also incorrect. I think that's a harmless error if it is even an error. I don't think that the VE is bound to, after having said sales clerk, retail housework, sales representative, I don't think the VE is bound to say, look at the following page in the DOT. I think that the VE can say, sales representative, and then we will look to the DOT for guidance as to what those folks do in their job, but I don't think that there's any authority that VE is bound to provide the DOT number or the case fails. As I understand it, this woman was on a kind of catheter set up where she was infected with morphine? I saw a reference to that, and, Your Honor, I do not recall. Maybe you can ask Mr. Wilborn. I don't recall at what time that came in and where in the development of her, in the progression of narcotics that she was prescribed, at what time that came in. So, I'm sorry. That played into one of the pain ability and the like that wasn't demonstrating symptoms. The fact is that she was getting morphine. Yeah, she was getting. She wasn't feeling the symptoms, but that's sort of, is it okay to go out and work in the general economy if you've got a catheter where you're getting drug morphine? Yeah, I can imagine that would be difficult, especially if you're hauling it around with you and what have you. But, certainly, as time went on under Dr. Fix's care, there were increasing prescriptions of pain medication. Once again, and I seem to recall that the last time Judge Fisher, I was here, we were talking about the issue of how to get inside somebody's head when they assert, I have pain, I have a lot of pain, I have excruciating pain. And it's kind of an impossible conundrum, to be honest with you. But all that the ALJ can do is to go to evidence of the record as a whole. And the ALJ cited a number of things here. And he cited, for example, she claimed that she had constant pain on a level of 10, on a scale of 1 to 10. She claimed that it was never-ending, that she was not allowed to breathe, that she couldn't sit for more than 15 minutes at a time. The ALJ pointed to the fact, A, that she'd been sitting for more than 15 minutes at that point in the hearing, which wouldn't be enough by itself, but there's more. B, that she had undertaken this trip to California, this long car ride, that you wouldn't undertake if you could only sit for 15 minutes at a time. And it doesn't matter. That does not matter. What is material is whether you can or cannot do it, not why. I agree that the funeral of your father-in-law, or whatever it may have been, which was not in the record anyway, but whatever it may have been, may have been a reason of extreme duress that would cause somebody to make a real effort to do it. But if your testimony, if a person's testimony is, I cannot sit for more than 15 minutes at a time, yes, yes, then you can't come forward and say, I can't sit for 15 minutes at a time, but I can when it's circumstance A, B, or C. I know that sounds harsh, but the question is not why she took the trip, but whether she was able to or not. I can't do it except under compelling circumstances. I have to be here, or when I put myself through, if I had to do that. But again, the question, recall, as far as drawing an inference about credibility, it is not, for that narrow question, it is not whether you had to do that every day. We're now talking about whether the ALJ is entitled to draw an inference about a person's credibility, generally, when they say things that are not backed up by the record. She had no demonstration of anxiety or agony when she did it? No, what happened was, she said, I can't sit for more than 15, in the course of the colloquy that they had, she said, I can't sit for more than 15 minutes at a time. The ALJ remarked that it's been over 25 minutes here, and she said, oh, yes, well, now I'm starting to feel antsy. I sat on this very bench, which was on back, calendar, a while back. She sat. Only patient. She sat. I believe it. But it was pretty obvious. Yeah, but I don't think it was here, in that hearing, or otherwise the matter would have come up at a much earlier stage in the hearing. But at any rate, we believe that the ALJ did cite sufficient reasons under the record for deciding, as between conflicting evidence, that the individual was not disabled. Thank you. Thank you, counsel. And you did use up your time, so you look like you have 30 seconds. You can have 30 seconds. Yes. With my 30 seconds, I would like to point out to the Court that the bottom two lines of page 38 and the top two lines of page 39 of my brief identify precisely why it is so critical that this case not be upheld at step four, because I believe that the clerk job that she had in Meyer and Frank was a stock clerk job, and I identify that by DOT number. And the Court simply has no basis in this record for finding otherwise. Thank you, counsel. The case just argued is submitted. We appreciate your arguments and your patience, and we will stand adjourned. Good argument on both sides throughout this week, so thank you. Thank you.
judges: Graber, Fisher, Smith